675 So.2d 297 (1996)
John CASH
v.
K.C.I. CONSTRUCTION, INC. and Danny Stevens.
No. 95-CA-1083.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1996.
Rehearing Denied June 12, 1996.
*298 Jerald N. Andry, Gilbert V. Andry, III, New Orleans, for Plaintiff/Appellant, John Cash.
W. Patrick Klotz, New Orleans, for Defendants/Appellees, K.C.I. Constructors, Inc. and Danny Stevens.
T. Justin Simpson, Larzelere & Picou, Metairie, for Intervenor/Appellant, Ebasco Constructors, Inc.
Before BOWES and DALEY, JJ., and CHARLES V. CUSIMANO, II, J. Pro Tem.
BOWES, Judge.
Plaintiff, John Cash, appeals from a judgment of the district court which dismissed his petition for damages. We affirm.

FACTS
In August of 1991, Mr. Cash was a 56 year old millwright foreman employed by Ebasco at the Shell Oil refinery in Norco. On August 12, 1991, Mr. Cash and his crew were engaged in the job of installing a boiler pump. The crew consisted of Cash's son, Barry Cash, a journeyman millwright and Karl Brindell, a pipefitter helper. The crew was engaged in the job of moving the base of the boiler pump, referred to as the "skid," into the utility unit of the refinery ("unit"). The "skid" was eighteen to twenty feet by six and one-half to eight feet, and it weighed 2,280 pounds. The "skid" was to be placed on a concrete platform embedded with bolts and bolted into place. As foreman, Mr. Cash was responsible for the job of moving and setting the "skid."
A crane owned by defendant K.C.I. Constructors, Inc. (hereinafter "KCI"), and operated by defendant, Danny Stevens, a KCI employee, was brought in to set the skid.
The skid was leveled on the crane rig by Cash and his crew, and was brought into place above the concrete base by Stevens, the crane operator. There were several other personnel present at the job site, including Richard Marcombe, a pipefitter superintendent for Ebasco, Paul Landry, a process operator for Shell Oil Company, and J.D. Dedebant, a Shell employee.
After the crane was in place, Cash signaled to Stevens to lower the "skid" over the bolts. The "skid" came down in a level position, however, the bolts in the concrete did not line up perfectly with the bolt holes in the "skid". At this time, Stevens felt the load "hang up" on something and he signaled to Cash that he did not "have the load." Cash then gave Stevens the signal to "dog off" which means to put all controls in a locked off position. The only way to lock the controls on the crane being used was to turn off the engine, which Stevens did.
Cash and his crew then began to maneuver the bolts into position to line then up with the bolt holes. They were able to maneuver all the bolts, except one. Cash began tapping the bolt with the valve wrench. On the third strike, the bolt went into the hole, causing the skid to fall onto the top of the concrete base and Cash's hands to become trapped between the concrete base and the skid.
As a result of the accident, Cash sustained severe injury to both hands, including a disabling injury to his left hand.
Cash filed this suit for damages against KCI and Stevens. Cash's employer, Ebasco, intervened for worker's compensation benefits paid to Cash. KCI answered the petition and raised the affirmative defenses of contributory and comparative negligence, third party negligence, last clear chance and borrowed servant immunity. After a trial on the merits, the court found that Stevens and KCI were not afforded immunity under the doctrine of "borrowed servant." However, the court then found that plaintiff had failed to prove, by a preponderance of the evidence, that his injuries resulted from negligence on *299 the part of defendants, KCI and Stevens, and rendered judgment dismissing plaintiff's petition.

FINDINGS OF FACT AND RULINGS OF THE TRIAL COURT
The trial judge, in her excellent written reasons for judgment, made the following findings of fact as to the cause of the accident and appellant's resultant injuries:
The project in question consisted of moving the skid from a position about 200 feet from the foundation, and setting the skid onto the bolts cemented into the platform in holes in the skid, and grouting the skid to the platform, using a 2 × 4 on the 1½ inch side to form the grout line. In an attempt to `soften' the load, the two-by-fours were standing on the narrow side to give a buffer between the skid and the platform. As the skid was moved into place, crew members noticed the two-by-four had been knocked over. Before the two-by-four could be adjusted, the skid dropped in place, pinning both of Cash's hands between the skid and the valve wrench Cash was using to attempt to align the bolts. Stevens lifted the load by using the outrigger to raise the boom.
John Cash testified that when some bolts lined up he had Stevens bring down the load to barely touch the bolts. According to Cash, the load was basically level and he had Stevens dog-off. [To "dog off" means to put all controls in a locked position.] He denies observing slack on the chokers and thought there was tension on the load, and that Stevens had control of the load. In order to align the bolts, Cash used a valve wrench to pull the bolts in place. When the last bolt was in place, the skid dropped in place, trapping Cash's hands and the valve wrench between the skid and the platform.
Danny Mark Stevens, [the crane operator], testified that once the skid hung up on the bolts on the platform, he knew he did not have the load, and that he had communicated this to the Ebasco crew. In fact, although Cash continued to signal Stevens to come down, Stevens quit releasing the load because he knew the load was not level and that he did not have it under control and that he immediately signaled to alert the crew to the situation.
Karl Brindell, who worked as a pipefitter's helper for Ebasco, verified that when Cash successfully pried the last misaligned bolt into place the skid slid down. Brindell, as well as Paul Landry, a Shell employee who assisted in walking the pump skid into the utility area, confirm (sic) Stevens's allegation that he notified the crew that he did not have the load under control. Another Shell employee, J.D. Dedebant, believes that Cash acknowledged Stevens's signal that he did not have the load.
Bruce Raymond, an Ebasco employee, testified as an expert in industrial safety. It was Raymond's opinion that boards of a minimum of four-by-four should have been used as softeners, since they would not have had the inclination to turn over as easily as a two-by-four placed on the narrow edge. He faults the Ebasco employees with failure to use the correct blocking procedure.
Raymond connects the problem of the anchor bolts' failure to line up with the holes in the skid with the skid being off level. The leveling of the load was undertaken by Ebasco employees.
Raymond suggests that Cash's use of the valve wrench to attempt to pry the bolt into alignment was unsafe, and that the correct procedure would have been to re-level and re-align the load so that it did line up. The implementation of this procedure would have been Cash's responsibility. Additionally, he states that it is Ebasco's policy that one not put any part of one's body below suspended loads.
Raymond's assessment of the accident contained in the report prepared by him on the date of the accident, and offered into evidence as Defendant-1-E:

Primary cause: Employee placed a part of his body under a suspended load.

Secondary cause: Employee failed to properly block the load prior to reaching under it. Should use at least a four-by-four to prevent it from falling over.

*300 Fred Liebkeman, accepted as an expert mechanical engineer, testified for the defendant that in his opinion, based on his inspection of the depositions of John Cash, Barry Cash, Danny Stevens, the statement of Karl Brindell, and the accident and incidents reports, that Stevens safely operated the crane, and that Cash's violation of safety rules in not keeping his hands out from under a suspended load caused the accident. He further opined that Cash would have been able to see the lack of tension in the straps and known that Stevens did not have control of the load, and that the bolts were supporting the load.
Kenneth Cagler, Sr., testified for the plaintiff as an expert in crane operation and safety. He opined that the cause of the accident was that the crane operator slacked off the whole load onto the bolts, so that when the last bolt was in place, the skid fell. Cagler reasons that if the crane operator had held the load, the skid would not have fallen into place and onto Cash's hands when the final bolt was aligned. He opines that Stevens should have picked up the load so that the whole load was not resting on the bolts.
[Emphasis supplied].
Based on these factual findings, the trial court held that:
Even accepting the plaintiff's interpretation of the facts and the suggestion of the plaintiff's expert, this court cannot conclude that the negligence of the operator Stevens was the cause of the accident. Once he realized he was not in control of the load, he communicated this to the crew. The fact that he was not in control should have been obvious to Cash, even if he did not hear or see the signals from Stevens. Plaintiff entirely caused his own injury by his failure to keep his hands out from under the suspended load while, with a valve wrench, he himself prodded the bolt into alignment.
The defendant had the duty to hold the load above the bolts while the Ebasco crew determined how to safely maneuver the bolts on the platform into the holes in the skid. There was no breach of that duty. His loss of control of the load was due to the rigging of the load, (a task completed by Ebasco employees under Cash's supervision) and the consequent hanging up of the skid onto the bolts on the side of the platform. Once the skid hung up and he lost the load, his duty was to discontinue releasing the load and to inform the crew that he did not have control. He fulfilled that duty.
Plaintiff has not proved by a preponderance of the evidence that his injuries were the result of the negligence of the operator of the crane. His petition for damages is therefore denied.
[Emphasis supplied].

ALLEGATIONS OF ERROR
In this appeal, Cash assigns as error the following:
1. The trial court's findings of fact were clearly wrong; its reasons for judgment contain internal factual inconsistencies which if corrected, would support the conclusion that Danny Stevens was negligent.
2. The trial court erred in considering facts which were not properly admitted in evidence.
3. The trial court was clearly wrong in failing to award John Cash damages to compensate him for the injuries he sustained as a result of Danny Stevens' tortious conduct.
In his first and third assignments of error, Cash alleges that the trial court erred in finding that Stevens was not negligent and in failing to award damages for injuries incurred as a result of the alleged negligence.
In our analysis of the issues presented for review by appellant, we are bound by the "manifest error" standard of review. Under that standard, the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong. A proper review, therefore, cannot be "completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record established that the finding is not clearly wrong." Where two permissible *301 views of the evidence exists, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216, 220.
Accordingly, we may not disturb the findings of fact made by the trial judge unless manifestly erroneous, or clearly wrong.
Plaintiff alleges that the trial judge made several inconsistent findings of fact concerning whether Cash knew that Stevens was no longer holding the load, whether Cash voluntarily placed his hands under the "skid" and whether the "skid" load was properly level on the crane. However, our review of the record in this matter reflects that the findings made by the trial judge were not inconsistent with the facts presented, by any means and that these findings of the trial judge were reasonable and logical based on all the evidence presented by the parties. Because these findings are reasonable on the record and are not clearly wrong or manifestly erroneous, we cannot overturn these factual determinations made by the trial judge.
Therefore, we find the first and third assignment of error raised by appellant to be without merit.
In his second assignment of error, Cash alleges that the trial court erred in considering evidence which was improperly admitted at trial. This evidence consisted of a the transcript of a statement made by Karl Brindell shortly after the accident in which he stated that, prior to the accident, Stevens told Cash and crew that he did not have the load under control.
In reaching a decision on this alleged procedural error, this Court must determine whether:
1. The particular ruling complained of was erroneous; and, if so,
2. The error, harm or prejudice to the defendant's cause, for unless it does, reversal is not warranted.
La.C.E. art. 103; Brumfield v. Guilmino, 93-0366 (La.App. 1 Cir. 3/11/94), 633 So.2d 903. The party alleging error has the burden of showing that the error was prejudicial to his case. The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Brumfield v. Guilmino, supra; Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5 Cir.1985), writ denied, 481 So.2d 631 (La.1986).
At some point prior to the trial of this matter, the deposition of Karl Brindell was taken. Attached and made an exhibit to the deposition was a transcript of the recorded statement made by Mr. Brindell shortly after the accident and also the written statement given by Mr. Brindell the day after the accident took place. At trial, the testimony of Karl Brindell was presented to the court via this deposition. The deposition was introduced into evidence by the plaintiff, however, at the time the deposition was introduced, plaintiff objected to the inclusion of the transcribed statement and also to any testimony in the deposition regarding that statement. The trial court allowed the entire deposition to be admitted into evidence, including the attached transcript, and she stated that she would reserve a ruling on the admissibility pending introduction of the actual tape of the statement. Plaintiff acquiesced in this decision of the court.
At the conclusion of trial, the matter was again left open for the production of the tape of the statement. There is nothing in the record to reflect whether the tape was actually provided to the trial court.
La.C.E. art. 1002 provides that:
To prove the content of a writing, recording or photograph, the original writing, recording of photograph is required, except as otherwise provided by this Code or other legislation.
Therefore, in the absence of the tape of the statement made by Karl Brindell, the transcript of this statement should not have been admitted into evidence.
However after a comparison of the entire record, we cannot say that the introduction of this statement was prejudicial to the plaintiff's cause; because also attached to the deposition was the handwritten statement of Mr. Brindell which contained the statement that Danny Stevens notified John Cash and *302 his crew that he did not have the load. In addition, the trial court also considered the testimony of two Shell employees, Paul Landry and J.D. Dedebant, on the scene of the accident at the time of the accident who each testified at trial that Danny Stevens told the crew that he no longer had control of the load.
Accordingly, we find that plaintiff has failed to prove that the admission of the transcript of the statement had a substantial effect on the outcome of the case as substantially the same evidence was admitted through other channels. Therefore, we also find this assignment of error to be without merit.

CONCLUSION
For the above discussed reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, John Cash.
AFFIRMED.