803 So.2d 261 (2001)
Ella R. HANNA, Plaintiff-Appellee,
v.
Jason C. ROUSSEL, et al, Defendants-Appellants.
No. 35,346-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*262 Mayer, Smith & Roberts, by Steven E. Soileau, Counsel for Appellants.
Ronald J. Miciotto, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, Judge.
In this auto/pedestrian accident, defendants appeal an adverse judgment from the trial court, finding the defendant-insured 100% at fault for plaintiffs personal injuries. Defendants complain that the trial court erred in failing to assign the plaintiff with any fault, that the trial court incorrectly admitted evidence of the insured's other traffic citations, and that the trial court's award of general damages was *263 abusively high. Finding that the trial court's rulings were correct, we affirm.

Facts
This suit arises out of an auto/pedestrian accident which occurred at the intersection of Texas and Market Streets in downtown Shreveport. During the noon lunch hour on November 4, 1999, plaintiff, Ella R. Hanna ("Hanna"), was walking south on Market Street, towards her place of employment and was attempting to cross Texas Street. While in the crosswalk, Hanna was struck by a small pickup truck driven by the defendant, Jason C. Roussel ("Roussel"), age seventeen at the time of the accident.
Roussel was driving south on Market Street which is a four-lane, one-way street. He stopped at the red light at the intersection in the outside lane of the east side of Market Street. When the light turned green, he slowly moved forward into the intersection preparing to turn left (east) onto Texas Street. Before completing his left turn, Roussel crossed the two westbound lanes of Texas Street and waited for a northbound pedestrian to cross the two eastbound lanes. The northbound pedestrian was therefore walking in the opposite direction of Hanna. After the other pedestrian crossed the eastbound lanes of Texas Street, Roussel began his left turn.
While Roussel was waiting to turn left onto Texas Street, Hanna was crossing Texas Street. Hanna was behind and to Roussel's left, out of his line of vision, when he attempted to complete his left turn onto Texas Street. As Roussel's truck was making the left turn and starting to head east, the driver's side mirror of Roussel's truck struck Hanna. Roussel and his insurer, United Agents Insurance Company ("United"), argue that Hanna walked into the side rearview mirror and fell to the ground.
Paramedics tended to Hanna at the scene of the accident. When Hanna's employer arrived at the accident scene, he drove her to Schumpert Medical Center, where she was examined and released. Hanna reported general soreness and scraped hands. The emergency room physician's diagnoses were: 1) left foot contusion/sprain; 2) lumbar strain; and 3) bilateral hand contusion and abrasions. Hanna never sought any further medical treatment. Hanna's medical expenses totaled $694.15.
The evidence adduced at trial revealed that Hanna returned to work the same afternoon of the accident although Hanna claims that she did not perform any work. She did, however, drive herself home from work that day. She went to work the following day, but left early.
After a bench trial, the trial court ruled that Roussel was 100% at fault for the accident. The court then awarded Hanna medical expenses of $694.15, property damage of $118.34, lost wages of $96, and general damages in the amount of $6,500.

Discussion

Victim Fault
Defendants first complain that the trial court committed error in failing to assess plaintiff with any fault for the accident. Defendants assert that Hanna could have avoided the collision with the exercise of reasonable care. Furthermore, defendants point us to several cases where courts have assessed pedestrians with a percentage of fault, when the pedestrian walked into a vehicle's path. See, Busby v. St. Paul Insurance Company, 95-2128 (La.App. 1st Cir.5/10/96), 673 So.2d 320, writ denied, 96-1519 (La.9/20/96), 679 So.2d 443 (Pedestrian 50% at fault); Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46 (Pedestrian 50% at fault); Kerrigan v. Imperial *264 Fire and Casualty Ins. Co., 99,603 (La.App. 3d Cir.11/3/99), 748 So.2d 67, writ not considered, 99-3569 (La.2/4/00), 754 So.2d 219, writ denied, 99-3410 (La.2/4/00), 754 So.2d 236 (Pedestrian 80% at fault); Johnson v. Safeway Insurance Co., 96-910 (La.App.3d Cir. 2/19/97), 694 So.2d 411, writ denied, 97-1750 (La.10/17/97), 701 So.2d 1330 (Pedestrian 50% at fault); Guerra v. White, 97-2391 (La.App. 4th Cir.6/16/99), 755 So.2d 894 (Pedestrian 35% at fault); Fayard v. Landry, 94-594 (La. App. 5th Cir.2/15/95), 651 So.2d 1370, writ denied, 95-0668 (La.5/5/95), 654 So.2d 325 (Pedestrian 50% at fault).
It is well-settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Touchard v. Slemco Elec. Foundation, 99-3577 (La.10/17/00), 769 So.2d 1200, citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An allocation of fault is a factual determination subject to the manifest error rule. Boggs v. Voss, 31,965 (La. App. 2d Cir.6/16/99), 741 So.2d 139. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; the issue for the reviewing court is not whether the trier of fact was wrong, but whether the fact-finder's conclusions were reasonable under the evidence. Touchard, supra.
Generally, duty is the obligation to conform to the standard of conduct of a reasonable man under the circumstances. Foster v. Clarendon Nat. Ins., 32-646 (La. App.2d Cir.3/1/00), 753 So.2d 968; Thielmier v. Louisiana Riverboat Gaming Partnership, 31,739 (La.App.2d Cir.3/31/99), 732 So.2d 620. Drivers are required to exercise due care to avoid colliding with pedestrians upon the road. La. R.S. 32:214;[1]Hundley, supra, Bade v. Wade, 607 So.2d 927 (La.App. 2d Cir.1992); Bennett v. State, Through Department of Transp. and Development, 503 So.2d 1022 (La.App. 2d Cir.1987), writ denied, 505 So.2d 58 (La.1987). Motorists are charged with the duty to see what an ordinarily prudent driver should have seen and avoid striking pedestrians in the road. Foster, supra; Bell v. USAA Cas. Ins. Co., 30,172 (La.App.2d Cir.1/21/98), 707 So.2d 102, writs denied, 98-0712, 98-0766 (La.5/8/98), 718 So.2d 433, 434.
Likewise, a pedestrian must exercise reasonable care to avoid leaving a curb or other place of safety beside the roadway and walking into the path of a vehicle. La. R.S. 32:212(B);[2]Hundley, supra; Donavan v. Jones, 26,883 (La.App.2d Cir.6/21/95), 658 So.2d 755, writs denied, 95-1786, 95-1891 (La.11/3/95), 661 So.2d 1379; Bacle, supra.
Tina McGee was the other pedestrian walking through the crosswalk in the opposite direction from Hanna. After Roussel waited for McGee to cross, the two women passed each other in the crosswalk approximately in the middle of Texas Street with McGee to the right of Hanna, between the path of Roussel's truck and Hanna's path. McGee testified that immediately after passing Hanna, she heard a "loud thump" *265 and turned to see Hanna lying on the street and Roussel's truck still in the process of turning. Hanna testified that immediately prior to impact, out of the corner of her eye, she briefly saw a red object and realized she was about to be hit. Roussel testified that he did not see Hanna prior to the impact.
Defendants assert that the testimony of Gerald Grace, a witness to the accident, requires that some fault for the accident must be assessed to Hanna. Grace, who was in his vehicle behind Roussel, described the impact as occurring immediately after Hanna and McGee reached the center of Texas Street in the following manner:
A. Okay. At that point he took off, he turned onto Texas, Ms. Hanna took a couple of steps, pushedshe saw the truck, tried to jump back and pushed her hands up against it. And that's when the mirror struck her.
From his view of the collision, Grace concluded that Hanna could have seen Roussel's truck.
First, from the standpoint of the jurisprudence, the pedestrian/auto accident cases turn on the unique facts of each setting, and in a situation like the present while the pedestrian is proceeding within the crosswalk with the proper signal in her favor, a finding of no fault on the pedestrian is likely. Next, from our review of the testimony, we find that the trial court could reasonably conclude that Hanna was proceeding through the crosswalk in a reasonable and attentive manner. Her description of the impact, which is consistent with the testimony of the other witnesses, is that the collision occurred immediately after she passed McGee. The trial court could conclude that Hanna was unaware of any threatening movement by Roussel's small truck, which proceeded slowly along a path parallel to her path, and that McGee partially screened Hanna from viewing Roussel's sudden turn. Roussel's duty in proceeding through the pedestrian crosswalk was not only to yield to the oncoming McGee, but to look to his left for pedestrians proceeding in the same direction as his truck. The trial court's finding of no fault on Hanna's part is therefore reasonably supported by the evidence and is affirmed.

Admission of Evidence
By this assignment, defendants argue that the trial court allowed opposing counsel to ask Roussel questions about traffic citations he received before the accident, which are completely unrelated to this accident. Defendants claim that this evidence was inadmissible, citing La. C.E. art. 609[3] and La. C.E. art. 404.[4]
More specifically, appellants refer us to the following exchange between plaintiff's counsel and Roussel during trial:

*266 Q. Were you convicted of any crime as a result of the accident occurred (sic) on November 4, 1999?
A. I do not recall, sir. I didn't do anything wrong.
Q. Did you plead guilty to any crime?
A. No.
Q. Did you pay a ticket?
A. I am not sure, sir.
Q. What do you mean?
A. I'm not sure if I paid the ticket. I have paid many tickets, and I don't know which ones I have paid.
Q. How many tickets have you had?
MR. SOILEAU: Objection about tickets.
MR. MICIOTTO: He [Roussel] opened it up.
MR. SOILEAU: I know
THE COURT: Overruled.
Q. How many tickets have you paid, sir?
A. Probably three or four at the most.
* * * *
Q. What other kind of tickets have you paid, sir?
MR. SOILEAU: I object, Your Honor. Once the amount of tickets, okay, we have opened that door, maybe, but details of other events.
THE COURT: Ordinarily, this is inadmissible, but it comes up in terms of the response by the party defendant, and I think it can be gone into briefly.
* * * *
After this exchange, plaintiff's counsel only asked Roussel one other question regarding previous traffic citations.
Based on this record, we find that Roussel's answer, "I'm not sure if I paid the ticket. I have paid many tickets, and I don't know which ones I have paid," opened the door on this issue, and the further brief discussion of the prior acts of the defendant was inconsequential. See, Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182, 1188 (La.App. 1st Cir.), writ denied, 458 So.2d 476 (La. 1984).
The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling is whether the alleged error, when compared to the entire record, had a "substantial effect" on the outcome of the case. La. C.E. art. 103; Roger v. Dufrene, 97-1946 (La.App. 4th Cir.9/9/98), 718 So.2d 592; See also, Cash v. K.C.I. Const., Inc., 95-1083 (La. App. 5th Cir.5/15/96), 675 So.2d 297, 301, writ denied, 96-1811 (La.10/25/96), 681 So.2d 369. Based on our review of the record, we find that plaintiff's questions regarding Roussel's other traffic citations *267 did not have a substantial effect on the outcome of the case. This assignment of error has no merit.

General Damages
Lastly, defendants argue that Hanna suffered only mild injuries, and that the trial court's general damage award in the amount of $6,500 is abusively high. The defense also points us to our recent cases in an attempt to show that the trial court's award is excessive. Defendants contend that a reasonable general damage award should be in the $1,500 to $2,000 range.
In Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, this court explained the appellate review of an award of general damages:
"General damages" are those which are inherently speculative in nature and cannot be fixed with mathematical certainty, including pain and suffering. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. La. C.C. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.

Only after an abuse of discretion is disclosed by an articulated analysis of the facts is an examination of prior awards in similar cases proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. DeYoung v. Simons, 32,378 (La.App. 2d Cir.10/27/99), 743 So.2d 851; Dixon v. Tillman, 29,483 (La.App.2d Cir.5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence, most favorable to the plaintiff, which reasonably could have been made by the trier of fact. Manuel v. State Farm Mut. Auto. Co., 30,765 (La.App. 2d Cir.8/19/98), 717 So.2d 277.
Under our law, a participant in an accident is entitled to recover any damages sustained as a result of an injury, whether physical or mental or both. Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990). Said another way, claims for mental anguish or fright are separate and independent from any claims for physical pain and suffering. Lennard v. State Farm Mut. Auto. Ins. Co., 26,396 (La. App.2d Cir.1/25/95), 649 So.2d 1114; Barr v. Smith, 598 So.2d 438 (La.App. 2d Cir.), writ denied, 604 So.2d 998 (La.1992); Smith v. Dow Chemical Co., 92-0883 (La. App. 1st Cir.3/28/94), 635 So.2d 325, writ granted, 94-1058 (6/24/94), 641 So.2d 207; Stewart v. Select Ins. Co., 93-666 (La.App. 3d Cir.2/2/94), 631 So.2d 599, writ denied, 94-0545 (La.4/22/94), 637 So.2d 159; see also, Stewart v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676 (1904); Laird v. Natchitoches Oil Mill, 10 La.App. 191, 120 So. 692 (La.App. 2d Cir.1929).
The trial court found Hanna, age 52, to be a very credible witness. In its reasons for judgment, the trial court accepted Hanna's testimony "regarding her injuries, both physical and mental." As a result of the accident, Hanna's eyeglasses were damaged, her clothes were torn, she was treated in an emergency room and received a tetanus injection for the cuts on her body. The evidence also revealed that *268 her hands, feet and back were injured, and that she was badly shaken up. Hanna testified that her back constantly hurt for about one month.
Hanna's emotional trauma and fear of crossing streets are additional elements of her general damages. Hanna testified that she felt terror and shaking because of the accident, and that she continues to be afraid to cross the street in the downtown area.
Although we find the trial court's award on the higher end of a reasonable award, we nonetheless conclude that the $6,500 award is not abusively high. The record before us supports the general award in light of the physical and emotional injuries sustained by this plaintiff. Therefore, this assignment of error likewise lacks merit.

Conclusion
Based on the foregoing, the findings of the trial court are hereby affirmed. Costs of this appeal are assigned to appellants, Jason C. Roussel and United Agents Insurance Company.
AFFIRMED.
NOTES
[1] La. R.S. 32:214 reads: "Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway."
[2] La. R.S. 32:212(B) states: "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."
[3] La. C.E. art. 609 reads, in pertinent part:

A. General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted inadmissible. However, evidence of the name of the crime of which he was convicted and the date of conviction is admissible if the crime:
(1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
* * * *
F. Arrest, indictment, or prosecution. Evidence of the arrest, indictment, or prosecution of a witness is not admissible for the purpose of attacking his credibility.
[4] La. C.E. art. 404 reads, in part:

A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.
* * * *
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
* * * *