753 So.2d 968 (2000)
Joyce FOSTER, et al., Plaintiffs-Appellants,
v.
CLARENDON NATIONAL INSURANCE, Defendants-Appellees.
No. 32,646-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*969 Travis M. Holley & Associates by Travis M. Holley, Bastrop, Counsel for Plaintiffs-Appellants.
Lunn, Irion, Johnson, Salley & Carlisle by James A. Mijalis, J. Martin Lattier, Shreveport, Counsel for Defendants-Appellees.
Before CARAWAY, PEATROSS and DREW, JJ.
DREW, J.
The widow and children of Alvis D. Foster appeal the judgment based on the jury verdict which rejected their damage claims arising out of the death of their husband and father. The jury found no negligence on the part of Harrell Floyd Bazar, the driver of a eighteen-wheeler log truck which struck and killed Foster on November 20, 1997. The decedent was walking south[1] facing northbound traffic along *970 Highway 507 in Red River Parish. Wearing camouflage clothing, Foster was going deer hunting before daylight on a dark, foggy morning. Also proceeding south with his lights on low beam, Bazar passed a slower vehicle. While in the passing (or northbound) lane, the log truck's left corner struck the right rear side of the victim who died of massive injuries at the scene. Bazar never saw Foster prior to impact. Foster's widow and children sued Bazar and his insurer, Clarendon National Insurance Co., to recover damages. For the following reasons, the judgment rejecting plaintiffs' claims is affirmed.

TESTIMONY
Daniel Wayne Havard testified that his niece is the defendant's wife. On the date of the accident, Havard along with Mark Wiggins and Jerry Hicks were employees of Wayne Wiggins of Wiggins Logging. Bazar was a contract log hauler for Wiggins. About 5:45 a.m., Havard saw Hicks, Bazar and Mark Wiggins at Byrd's Grocery near Castor. Havard testified it was still dark with a light fog he described as hazy and thicker in low areas than high ones. However, the fog was light enough that he had no problem driving safely at 55 to 60 mph with his lights on bright as he proceeded south on Highway 507. Driving an empty lowboy (an eighteen wheeler designed to haul equipment), Havard left the store ahead of the others. Acknowledging there was a slight hill past the accident scene, Havard said he was able to maintain the same speed going up the hill, since it was not much of an incline.
As Havard rounded a curve, he observed a north bound vehicle traveling toward him in the middle of the road coming down the hill. The oncoming vehicle moved back into the northbound lane and dimmed its lights. Right after Havard passed that vehicle, he noticed a man walking south on the fog line of the north-bound lane. Estimating the pedestrian was only about 30 feet from him when sighted out of the corner of his eye, Havard saw the man a second or a second and a half before his vehicle was even with him. The pedestrian dressed in camouflage did not turn his head as Havard passed. The witness saw nothing in the walker's hands nor any reflective material on his clothing. Just after Havard passed him and drove up the hill, Havard checked his rear-view mirror and noticed a following vehicle fall out to pass. Havard estimated the following vehicle was four to ten seconds behind him. Havard could not see the pedestrian in his rear-view mirror and recalled thinking that he hoped the pedestrian heard the truck coming. Havard topped the hill and did not see the accident. Havard speculated he probably could have avoided the pedestrian in the time he saw him had the pedestrian been in Havard's lane of travel.
Bienville Parish Deputy Rodney Warren was dispatched to the accident. Although he did not locate the site within Bienville Parish, he continued to the scene which was 4½ to 5 miles from where he received the call. Warren described weather conditions as foggy and pretty dense in low areas such as the Black Lake bottoms right at the Bienville-Red River parish line. According to Warren, he had to decrease his speed and keep his lights on dim due to the fog as he traveled just before dawn. He stated he was almost up on the scene before he saw people flagging him down. The sun was beginning to come up. The deputy found that Foster was dead. Bazar, who was upset, stated that he was passing a south-bound vehicle and the next thing he heard was hitting Foster whom Bazar did not see. Warren said he did not find a flashlight, although he did not search the woods. The deputy also saw no reflective material or hunter's orange on the decedent's clothing. His recollection was that Foster's body, his gun, his boots *971 and the debris were off the road. The deputy found no evidence that Bazar's truck ever left the road.
Red River Parish Deputy Vernon Perrin stated it was just barely daylight when he arrived at the scene. Perrin described the road as dry and the weather as hazy but not foggy. In addition to a boot on the shoulder of the road, he also found pieces of a gun. Perrin found no debris on the road and no vehicle skid marks on the road or shoulder. In addition, the deputy assisted in looking for the decedent's personal effects and found no flashlight. The decedent's clothing had no hunter's orange or reflective material.
Bazar, a professional truck driver for some 10 years, testified that he obtained his commercial driver's license when it was instituted by the State of Louisiana. Bazar acknowledged that in studying for the commercial driver's test he learned that drivers cannot see hazards at night as soon as they can see them in daylight; that drivers can be caught by surprise and are less able to avoid crashes in the dark; that people cannot see as sharply in the dark or in dim light; that one should drive more slowly when the lighting is poor; that a driver should drive so that he can stop in the distance that he can see ahead; that headlights are the main source of light for the driver and for others to see the driver; that a driver can see about 250 feet when lights are dimmed as opposed to 350 to 500 feet with high beams; that stopping within sight distance means being able to stop within the range of one's headlights; that in fog the driver should use dimmed lights and watch for others; that one should not drive in thick fog; that one should be prepared for emergency stops when driving in fog; that the driver should adjust speed to suit driving conditions; that a driver should assume that a pedestrian, cyclist or a passed vehicle does not see him; that a driver should know a pedestrian or cyclist can suddenly move into his path and that a driver should always operate his vehicle a safe distance behind others.
After having coffee, Bazar left shortly after Havard. Mark Wiggins was ahead of Bazar and Hicks was behind him. Bazar's tandem wheels were loaded onto his truck which made the truck easier to handle and to stop. Bazar stated it was dark with patchy fog which was thicker in low places. He depended entirely on his lights. About a mile from the store, he passed Mark Wiggins who was driving a slow work truck. Bazar never caught up with Havard before the accident but could see him in the "long dim" ahead. Bazar described coming up behind a slow moving S-10 pickup which he followed for about a quarter mile. When he came around a curve into a safe passing zone and saw no approaching headlights, Bazar began to pass in an area of light to medium fog which was not such that he was prevented from driving at the speed limit. In response to questioning, Bazar stated he could see no oncoming lights and he assumed everything was fine. Bazar explained that he did not just guess that everything was okay ahead, since he first checked to see that no vehicle was coming. When he began to pass, he put his blinker on and then fell out to pass. Both vehicles' lights were on dim. Bazar stated his were on dim due to fog and so he would not blind the driver he was passing. When he got beside the slower truck, he turned on his right-hand blinker and moved up and glanced in his mirror the first time to see if he had cleared the truck. When he glanced back into the mirror the second time and started to move over into his own lane, the accident happened.
Bazar stated his passenger side wheels were touching the middle yellow line at impact and he estimated his driver's side wheels were at least two feet from the edge of the road. Bazar also said that his wheels never left the road and the closest his left wheels came to the edge was 10 or 12 inches. Bazar clearly stated that he never saw the decedent prior to or during *972 the impact which occurred just after he had glanced into his right mirror to make certain he had completely passed the slower vehicle. He looked ahead and glanced back into the right mirror when the accident happened. He estimated his eyes were off the road more or less three seconds and that he was not going over 55 mph. Bazar also explained that he never down-shifted (a procedure which makes the large truck pick up speed more quickly) when passing and just gradually gained speed. The driver also noted that he could see the distance of his lights on dim and that he saw no light or reflection up ahead as he passed. Not knowing what his truck had hit, Bazar immediately stopped his truck and put on his flashers. The driver he passed along with Mark Wiggins and Hicks stopped. One of them informed Bazar of the nature of the accident.
Plaintiffs' accident reconstruction expert, Davy L. Bernard, a physics professor at U.L.L., testified that in arriving at his opinion, he assumed all the lighting in the rural area was provided by the vehicles. He opined that reaction time for the average driver was about 1.5 seconds at night. Bernard defined reaction time as the time from when a person first sees an event, the event is processed to determine if a hazard exists and a decision is made to react. Bernard also stated the visibility with low beams ranged from 160, the minimum, to 250 feet. In his view, the camouflage clothing should have been visible at 160 feet. Bernard explained that a vehicle traveling 55 mph moves 81 feet per second; therefore, a vehicle proceeding at that speed would travel about 125 feet during the 1.5 second reaction time. When Bazar was passing, the lights of both vehicles would have illuminated the road and given visibility of between 200 and 250 feet. Bernard also concluded, based on the location of Foster's body and the fact that the officers found no debris in the road, that the impact occurred very near the edge of the road. In Bernard's opinion, Bazar was concerned with the vehicles he was passing and failed to maintain a proper look-out ahead. Bernard opined that, had Bazar been looking ahead, he would have had time to see and avoid the pedestrian assuming that visibility was 160 feet. Further, Bernard concluded that the lack of hunter's orange or reflective material on Foster's clothing was not a factor in causing the accident, since Bazar was not looking ahead.
The defendant's accident reconstruction expert, Vernon Wade, a mechanical, electrical and forensic engineer, reached a different conclusion as to the cause of the accident. Wade concluded that, because Foster was walking on the dark roadway in camouflage clothing and cap without any hunter's orange or reflective material, Bazar did not have sufficient time to see Foster and to react to avoid the accident. Using similar figures and sources to the plaintiffs expert, Wade calculated that Bazar's vehicle was traveling 55 mph and moved 81 feet per second. He opined that the lights on Bazar's left side illuminated from 150 to 175 feet. Wade explained that perception reaction time included perceiving a object, deciding what it is and what to do, initiating the reaction and actually reacting. In Wade's opinion, perception reaction time here was three to four seconds, because it was dark and the tractor trailer's airbrakes are slower than a car's. Wade disagreed with the plaintiffs expert that the perception reaction time was 1.5 seconds. Wade agreed with the plaintiffs' expert that Bazar could not have seen Foster when he began to pass or when he was even with the rear wheels of the vehicle he was passing. Further, Bazar would have had sufficient time to see and avoid Foster had he been wearing hunter's orange which can be seen from 700 feet away. The expert surmised that Bazar did not see Foster from 30 feet away as had Havard because he was checking his side mirror. However, even if the driver had seen the pedestrian at a distance of 30 feet, he would not have had sufficient time to avoid the accident. Relying on the testimony of witnesses and calculations based *973 on the impact points, Wade came to the conclusion that the impact occurred entirely in the left passing lane about six feet in from the edge and not at the edge or shoulder of the highway.
The driver of the vehicle Bazar was passing when the accident occurred, Layne Donaldson, testified that the morning was dark and cold with pretty heavy fog. Although he stated the fog was not such that it would have prevented his going the speed limit, he was driving 45 or 50 mph because he was going to turn at the top of the hill. He knew Bazar was going to pass because his left blinker came on. Both his and Bazar's lights were on dim. Bazar did not exceed the speed limit or go off the left side of the road. Donaldson had a clear view of the road ahead and never saw a pedestrian; on cross examination, he acknowledged that he looked over at Bazar's vehicle as it was passing him. When Bazar cleared his vehicle, Bazar put his right blinker on and started moving back into the right, southbound lane when the impact occurred. To the best of his recollection, Bazar's right blinker had blinked two or three times. When debris hit Donaldson's truck, he estimated that Bazar was halfway back into the right hand lane. Bazar immediately pulled his truck onto the right shoulder and Donaldson parked behind him. Donaldson went back and found Foster who had no reflective material on his clothing. Donaldson assisted in the search for the victim's personal items. Boots, socks and a part of his gun were located. Donaldson stated there was a little glass and a part of the headlight which they kicked out of the roadway.
Louisiana State Trooper William Lee Mott investigated this accident which occurred while it was still dark. Mott administered the alcohol breath test which Bazar voluntarily took; no alcohol was in the driver's blood. The trooper testified that Bazar stated he had passed a truck traveling about 45 to 50 mph and was pulling back into the right lane when he saw a white flash in front of his vehicle at the moment of impact. None of the witnesses interviewed by the trooper saw Foster in the road. The investigation revealed that Bazar did not exceed the speed limit and passed in a legal passing zone. Trooper Mott specifically searched for but did not find any evidence that Bazar's vehicle moved off the left side of the road. The area at which Foster's body first hit the ground was 4.6 feet from the edge of the road. His body was located down an incline in the ditch 35 feet from first impact point. Trooper Mott observed there was ample room for someone to have walked in the ditch area. Among the decedent's personal effects located at the scene were a broken gun, a hat, and his boots. No flashlight was located. The trooper confirmed that Foster was dressed in camouflage with no reflective material.
Mark Wiggins described the fog in the area of the accident as moderate but not enough to slow or impede driving. Wiggins saw Bazar's blinker come on and the truck eased out to pass the slower truck which Wiggins estimated was traveling 45 to 50 mph. At no time during the passing maneuver did Bazar's vehicle move off the left side of the road. Wiggins stated that Bazar turned on his right blinker to move back into his own lane of travel and it "probably blinked twice." Wiggins opined that Bazar was still traveling straight and did not have enough time to get back in yet. Wiggins saw something he thought was a blowout, immediately before Bazar moved over "kind of fast" to the right lane. Wiggins stopped to offer help and they went back and found Foster who was dressed in camouflage with no reflective material on his clothing. They found the victim's boots and socks but no flashlight.
Jerry Hicks was driving his own pickup truck behind Bazar. Hicks described the fog as varying from light to heavy but only hazy in the accident location. While it was still dark, the fog did not prevent drivers from going the speed limit. Hicks testified that Bazar turned on his left blinker, moved around the slower truck and then *974 turned on his right blinker to go back into his lane. At no time did Bazar's vehicle go off the left side of the road. Hicks did not know the speed of Bazar or the vehicle Bazar passed. Hicks testified he knew something had gone wrong during the pass because Bazar almost went off the right side of the road when he returned to his lane of travel. He stopped and learned that Bazar had hit a person. Hicks saw Foster's body from a distance of 10 to 12 feet and observed he was wearing camouflage with no hunter's orange or reflective material.

LAW
La. R.S. 23:73:
The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:
(1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
(2) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.
La. R.S. 32:75:
No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.
La. R.S. 32:76:
A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
(1) when approaching the crest of a grade or upon a curve in the highway, where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction;
(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;
(3) when the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, or tunnel.
B. The foregoing limitations shall not apply upon a one-way roadway or a multiple lane highway nor to the driver of a vehicle turning left into or from an alley, private road or driveway.
La. R.S. 32:214:
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
La. R.S. 32:216:
A. Where sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon an adjacent highway.
B. Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction.

*975 DISCUSSION

In Mistich v. Volkswagen of Germany, Inc., 95 0939 (La.1/29/96), 666 So.2d 1073, the supreme court explained that findings of fact are allocated to the trial courts. An appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. If two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly wrong. When the fact finder's conclusions are based on determinations of the witnesses' credibility, the manifest error standard requires great deference to the trier of fact, since only the trier of fact observes the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. If a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. The issue for the appellate court is not whether the trier of fact was wrong but whether the fact finder's conclusions were reasonable. When expert witnesses give differing testimony, the trier of fact must determine which evidence is most credible. The two-part test for reversal of a fact finder's determination is: (1) A finding by the appellate court that a reasonable factual basis does not exist in the record for the finding of the trial court, and (2) a conclusion by the appellate court that the record establishes that the fact finder is clearly wrong (manifestly erroneous). Mistich, supra.
Generally, duty is the obligation to conform to the standard of conduct of a reasonable man under the circumstances. Thielmier v. Louisiana Riverboat Gaming Partnership, 31,739 (La.App.2d Cir.3/31/99), 732 So.2d 620. Drivers are required to exercise due care to avoid colliding with pedestrians in the road. Motorists are charged with the duty to see what an ordinarily prudent driver should have seen and avoid striking pedestrians in the road. Bell v. USAA, 30,172 (La. App.2d Cir.1/21/98), 707 So.2d 102, writs denied, 98-0712, 98-0766 (La.5/8/98), 718 So.2d 433. In Bell, supra, this court affirmed a jury's conclusion that the driver was not at fault in striking a pedestrian who ran into the street without looking. The record supported the jury's conclusion that the driver exercised the requisite standard of care.
In Myles v. Turner, 24,198 (La. App.2d Cir.1/19/94), 632 So.2d 384, this court affirmed the judgment absolving the driver from fault in striking an intoxicated pedestrian, because the plaintiff did not meet the burden of showing that the driver could or should have seen the pedestrian in time to avoid him or warn him of her approach. Liability is not imposed on a driver simply because his vehicle collides with a pedestrian. The plaintiff must prove negligence on the part of the driver. Myles, supra.
Contending that the jury erred in failing to find Bazar at fault in causing the accident, the Fosters rely on the victims's compliance with La. R.S. 32:216 which provides that when there are no sidewalks, a pedestrian should walk on the left side or shoulder of the highway facing oncoming traffic. The Fosters assert that Bazar violated La. R.S. 32:214 which directs drivers to use due care to avoid colliding with pedestrians on any roadway; La. R.S. 32:73 which governs passing; La. R.S. 32:75 which provides that no passing vehicle should proceed left of center unless the left side is clearly visible and free from oncoming traffic and La. R.S. 32:76 which provides that no vehicle should be driven to the left side of the highway when a grade or curve obstructs the driver's view.
The Fosters rely heavily on this court's opinion in Wilhite v. Beavers, 227 *976 So.2d 919 (La.App. 2d Cir.1969) in which a passing driver struck from the rear and injured a pedestrian facing oncoming traffic and walking on the edge of the road. The accident occurred about 6:30 a.m. on December 20, 1967, on a wet, dark morning made more dangerous by low overhanging clouds and dense fog. This court found the driver guilty of gross negligence and concluded that the pedestrian was not guilty of contributory negligence which would have barred his recovery. The pedestrian had a right to be where he was walking while the driver attempted to pass a forward vehicle in inclement weather. In contrast to the facts in this case, that accident occurred on a wet, slippery roadway in dense fog which impeded visibility and was impenetrable by the headlights of autos for any appreciable distance. The majority of the witnesses in the instant case testified that, while foggy, the conditions did not prevent vehicles from operating at the 55 mph speed limit.
In Finley v. North Assur. Co. of America, 476 So.2d 837 (La.App. 2d Cir.1985), this court reversed a trial court ruling and cast a motorist with 30% fault for driving out of a patch of fog and striking an inebriated couple who stood embracing in the motorist's lane of travel. Both victims had on blue jeans while the woman had on a cream colored blouse and the man wore a red and blue shirt. Concluding the driver was comparatively negligent, this court found that if the driver could not see the victims due to fog, he was driving too fast for conditions; or, if he was not impaired by fog, he should have had his lights on high beam for maximum visibility.
In Devereux v. Allstate Ins. Co., 557 So.2d 1091 (La.App. 2d Cir.1990), the court found a driver 20% at fault in striking and killing a pedestrian wearing dark clothing and standing in the motorist's lane of travel. The pedestrian was cast with 50% of the fault and a phantom driver who left the scene with 30%. The phantom distracted the driver by passing at high speed with his lights on bright and starting back into the driver's lane before he had completely passed the driver. The plaintiffs rely on Finley and Devereux, supra, to support their argument that Bazar should be found at fault in causing this accident.
Bazar and his insurer maintain that both the driver who executed a legal passing maneuver and the victim had the duty to act as reasonable men under the circumstances. The jury reasonably concluded Foster failed to take basic safety precautions to insure his visibility while walking on a dark roadway. In Burks v. McKean, 559 So.2d 921 (La.App. 2d Cir. 1990), writ denied, 566 So.2d 398 (La. 1990), the driver who struck a pedestrian on the edge of an interstate at night was found not at fault. This court stated that a motorist driving at night is not charged with the duty of guarding against striking an unexpected or unusual obstruction which is difficult to see and which the driver had no reason to anticipate he would encounter on the highway. A driver is liable for striking a pedestrian only when there is an opportunity to appreciate the pedestrian's peril in time to avoid the accident. Burks, supra.
This jury heard from Bazar and others in the area when the accident occurred. A number of witnesses testified that the fog did not prevent vehicles from traveling at the 55 mph speed limit. Further, the witnesses agreed that Bazar executed his passing maneuver in a legal passing zone and never exceeded the speed limit while moving around a slower moving vehicle. All agreed the victim was wearing camouflage clothing which contained no reflective material. A number of witnesses stated they saw no flashlight on the victim's person. All confirmed there was no lighting except for the vehicles' headlights when the accident occurred before daylight. Several witnesses stated that Bazar's vehicle never left the roadway surface during the passing maneuver. The witnesses corroborated Bazar's use of turn signals and some stated the truck was in the process of completing the pass when the impact *977 occurred. Havard, another southbound motorist, passed Foster just prior to the accident and reported that he was able to see him only when his vehicle was almost even with the point at which Foster was walking on the road. The accident reconstruction expert for the plaintiffs testified that the accident was caused by Bazar's failure to look ahead properly and see the victim. In contrast, the expert for the defense stated that due to the victim's attire in camouflage coveralls and hat and his presence in the road it was impossible for Bazar to have seen the pedestrian in time to avoid the accident.
Both Bazar in driving his vehicle on a dark foggy morning and Foster in going deer hunting before dawn had the responsibility to act as reasonable men. The jury obviously accepted the testimony of Bazar, his witnesses and the defense expert that Bazar acted reasonably and was without fault. Moreover, the jury evidently rejected the conclusion by plaintiffs' expert that Bazar's negligent actions caused this horrible mishap. Having reviewed this record in its entirety, we cannot find that the jury was manifestly erroneous in concluding that Bazar was not at fault and that the victim's own unreasonable actions in placing himself in obvious danger by walking dressed entirely in camouflage on a rural road before dawn caused this unfortunate tragedy.

DECREE
For the foregoing reasons, the judgment is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] At the point where this accident occurred on Highway 507, travelers on the two-lane highway proceeded either in a southwesterly direction or a northeasterly direction. Some witnesses spoke of traveling east or west while others considered themselves to have been proceeding north or south. For the purposes of this opinion, the directions of the two lanes of travel are referred to as heading north or south.