NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-332

IDA COSEY WYLIE, ET AL.

VERSUS

JOSEPH C. PELTIER, JR.

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 81549
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

REVERSED AND REMANDED.

Steven D. Crews
Corkern, Crews & Guillett, L.L.C.
P. O. Box 1036
Natchitoches, LA 71458-1036
(318) 352-2302
Counsel for Defendant/Appellee:
Joseph C. Peltier, Jr.

**William Daniel Dyess**
**Dyess Law Firm, LLC**
**P.O. Box 967**
**Natchitoches, LA 71458-0967**
**(318) 352-5880**
**Counsel for Plaintiffs/Appellants:**
**Ida Cosey Wylie**
**LaShawn Cox**
**Nai Emah Wylie**

**PICKETT, Judge.**

The widow of pedestrian who was struck and killed by a vehicle and the mother of his child appeal the dismissal of their wrongful death and survival actions against the driver of the vehicle and his insurer. For the following reasons, we reverse the judgment dismissing the suit and remand for further proceedings.

**FACTS**

On June 28, 2008, at 1:32 a.m., Ronald David Wylie was walking west in the eastbound lane of Highway 6 between Clarence and Natchitoches when he was struck and killed by a vehicle driven by Joseph C. Peltier, Jr. Mr. Wylie was dressed in dark clothing and was under the influence of alcohol and cocaine. He had been walking on the highway for at least thirty minutes when he was hit. The accident occurred on an unlit, straight section of Highway 6 approximately one-fourth mile west of its intersection with Highway 71.

Mr. Wylie's widow and the mother of his minor daughter filed suit against Mr. Peltier and his insurer, State Farm Mutual Automobile Insurance Company, asserting wrongful death and survivorship claims. The parties engaged in discovery and deposed Mr. Peltier, witnesses to events surrounding the accident, and State Police troopers involved in the investigation of the accident.

Mr. Peltier testified in his deposition that he was traveling fifty-five miles per hour in the westbound lane of Highway 6 toward Natchitoches when he saw a vehicle on the shoulder of the westbound lane with its flashers on and that to avoid any person who might be outside the vehicle, he steered left approximately three feet across the center line of the highway into the eastbound lane. After passing the vehicle, he began returning to the westbound lane at which time he struck a pedestrian (Mr. Wylie) who was on the left side of his vehicle. He testified that he

1

diverted "some" of his attention to the car on the shoulder when he passed it to insure "no one was there" and that as he began returning to the westbound lane, he saw Mr. Wylie when the beam of his headlights "hit" him. Mr. Peltier explained, "it was too late"; "it was instantaneous as I came back into my lane. [He] was there[,] and I hit my brakes[,] and I was right on him, I guess."

Mr. Peltier did not know what he struck until he stopped his truck after hitting Mr. Wylie. He testified that if the vehicle on the shoulder of the road had had its headlights on, he possibly could have seen Mr. Wylie in the road, but he did not believe the vehicle's headlights were on when he got out of his truck. Mr. Peltier further testified that it was clear that night and that he had his low-beam headlights on because he often encountered patches of fog on this highway as he drove to his place of business, a donut shop, at approximately the same time every morning.

Thirty minutes before Mr. Wylie was struck, Ronny McBroom saw a black male walking in the middle of the westbound lane of Highway 6 and reported it to the Natchitoches Parish Sheriff's Department. Mr. McBroom testified that he saw Mr. Wylie "when my headlights hit him . . . when I seen [sic] him and went [past] him . . . [it was] just a momentary glimpse." According to Mr. McBroom, he was driving thirty to thirty-five miles per hour when he passed Mr. Wylie.

Thereafter, Chisandra Jones saw a pedestrian walking on Highway 6 as she turned onto the highway. She explained that she was driving slowly as she made her turn and only saw him when he flicked his cigarette. She stated that she almost hit him because he was in the middle of the road. After seeing him, she returned to her home to get her boyfriend, Robert Evans, and they returned to find the pedestrian. Upon their return, Ms. Jones called 911 to report a man walking on the highway, while Mr. Evans got out of the vehicle and asked Mr. Wylie if he needed a ride. The

2

pedestrian kept walking and responded, "I got this." According to Ms. Jones, Mr. Evans got back into her vehicle and activated the vehicle's emergency flashers.

Ms. Jones further testified that the pedestrian would not get in her vehicle and that Mr. Evans pulled over onto the shoulder of the highway, leaving the flashers on. At one point, Ms. Jones testified that Mr. Evans also left the headlights on, but on further questioning, she testified that she did not remember whether or not he left the headlights on. Ms. Jones agreed with defense counsel that Mr. Peltier could not "miss" Mr. Wylie, explaining that no one could have "missed" Mr. Wylie because her vehicle was on the side of the road with the flashers on and a passing driver would look to insure he was past her vehicle before moving back into his lane of travel.[1] Ms. Jones further testified that she did not see Mr. Peltier do anything "out of the ordinary," "inappropriate," or "wrong."

Mr. Evans testified that Ms. Jones came to get him because a pedestrian was walking in the road in Clarence. He explained that he rode with her back to where the pedestrian was and asked him if he needed a ride and that the pedestrian responded something he could not understand. The pedestrian was then hit by a truck. Mr. Evans stated that Ms. Jones's vehicle was stopped on the shoulder of the road with its emergency flashers on and that the pedestrian "was in the middle of the road" or "a little bit off the middle" of the road. Mr. Evans testified that he was standing on the side of Ms. Jones's vehicle when the accident occurred; he explained, "9 times out of 10 when a person sees somebody with their flashers on they [sic] going to move over a little bit. When [Mr. Peltier] moved over a little bit and probably when he saw the guy walking, he couldn't miss him." Mr. Evans further

---

[1]The plaintiffs argue that Ms. Jones and Mr. Evans's use of the terms "miss" and "missed" establish that Mr. Peltier should have seen Mr. Wylie before he struck him. However, when read in the context of their testimony as a whole, it is clear that these witnesses' use of these terms indicates that in their opinion, Mr. Peltier could not avoid striking Mr. Wylie.

3

explained: "[Mr. Peltier] didn't get over much but he got over because . . . the truck that I was in [was] on the side of the road."

After the accident, Mr. Evans went to talk to Mr. Peltier and told him that "he couldn't miss [the pedestrian]." Later, Mr. Evans reiterated, "When somebody [is] walking in the middle of the road and it's dark, you ain't going to see them until you get dead up on them. How are you going to miss somebody?" He clarified his comments, stating "it wasn't [the driver's] fault . . . he hit [the pedestrian] because the guy was in the middle of the road."

State Police Trooper Steven B. Pezant investigated the accident. He testified to the information he had gathered at the scene and from a State Police accident reconstructionist. Data from the sensing diagnostic module in Mr. Peltier's truck showed that Mr. Peltier was traveling fifty-five miles per hour when he hit Mr. Wylie, which Trooper Pezant stated was the posted speed limit where the accident occurred. Test results from alcohol and drug screens ordered by Trooper Pezant showed that Mr. Peltier did not have any alcohol or drugs in his system and that Mr. Wylie had alcohol and cocaine in his system. Trooper Pezant testified that a pair of black slip-on shoes facing west was found on top of the center line in the middle of the road immediately prior to where Mr. Wylie was struck.

Trooper Pezant related that Mr. Peltier told him that after observing no traffic was coming toward him in the eastbound lane, he moved over approximately four feet from his driving position because of the vehicle with flashers on that was parked on the shoulder of the highway. Trooper Pezant testified that a motorist in Mr. Peltier's position, approaching a vehicle stopped on the shoulder with its flashers on, is allowed to move into the opposite lane of travel if the move is made in a cautious

4

manner. He concluded from his investigation that Mr. Peltier "did everything a normal person . . . would do in that situation."

Relying on this deposition testimony and Trooper Pezant's investigation, the defendants filed a motion for summary judgment, seeking dismissal of the plaintiffs' claims. At the conclusion of the hearing on the motion, the trial court took the matter under advisement and, thereafter, issued Reasons for Judgment in which it granted summary judgment in favor of the defendants. A judgment to that effect was signed on June 23, 2009. The plaintiffs appealed.

## MOTION FOR SUMMARY JUDGMENT

Appellate courts review motions for summary judgments de novo to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." *Id.* "A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). "A 'fact' is material when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are 'material' if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Penalber v. Blount*, 550 So.2d 557, 583 (La.1989).

5

While the initial burden of proof is on the mover to show that no genuine issue of material fact exists, if he will not bear the burden of proof at trial on the issues presented by the motion for summary judgment, he is not required "to negate all essential elements" of his opponent's claim and needs only to show that there is "an absence of factual support for one or more elements essential" to his opponent's claim. La.Code Civ.P. art. 966(C)(2). If the opponent "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

**DISCUSSION**

We begin with two observations pertinent herein. First, duty is generally "the obligation to conform to the standard of conduct [of] a reasonable man in like circumstances." *Fox v. Bd. of Sup'rs of La. State Univ.*, 576 So.2d 978, 981 (La.1991). Second, "issues that require the determination of reasonableness of acts and conduct of parties under all facts and circumstances of the case can not ordinarily be disposed of by summary judgment." *Granda v. State Farm Mut. Ins. Co.*, 04-1722, pp. 4-5 (La.App. 1 Cir. 2/10/06), 935 So.2d 703, 707, *writ denied*, 06-589 (La. 5/5/06), 927 So.2d 326 (quoting *Matthews v. Ashland Chemical, Inc.*, 703 F.2d 921, 925-26 (5th Cir.1983)).

Keeping these general rules in mind, we review the law and jurisprudence concerning motorist/pedestrian accidents, which was outlined by this court in *Uriegas v. Gainsco*, 94-1400, pp. 15-18 (La.App. 3 Cir. 9/13/95), 663 So.2d 162, 171-72, *writ denied*, 95-2485 (La. 12/15/95), 664 So.2d 458 (case citations omitted):

> Louisiana law does not impose absolute or strict liability upon a motorist involved in a collision with a pedestrian. Motorists are not the insurers of pedestrians' safety. However, a motorist is statutorily obligated to exercise due care to avoid colliding with any pedestrian upon the roadway and must give warning to the pedestrian by sounding the horn when necessary. [La.R.S. 32:214] Furthermore, a motorist

6

must exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway. La.R.S. 32:214.

The fact that an accident occurs does not create a presumption of negligence in favor of either the pedestrian or motorist. Accidents occurring between a pedestrian and a motorist are governed by the principles of comparative fault. La.Civ.Code art. 2323[.] Therefore, a determination of negligence in motorist/pedestrian accidents rests upon the particular facts and circumstances of each case.

The driver of a vehicle bears a greater responsibility to avoid pedestrian/motorist accidents because the consequences of his fault present the potential for causing the greater havoc. . . . As stated by the Louisiana Supreme Court in *Baumgartner v. State Farm Mut. Auto. Ins. Co.*, 356 So.2d 400, 406 (La.1978):

> The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety. . . . It must be noted, however, that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.

Likewise, a pedestrian is charged with a duty to exercise reasonable care when entering the roadway or a crosswalk. . . . [W]hen a pedestrian crosses a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection, the pedestrian must yield the right of way to all vehicles upon the roadway. La. R.S. 32:213(A). Therefore, responsibility for travel free from undue peril on the streets and highways of this state is shared by both the motorist and pedestrian. The countervailing duties that motorists and pedestrians owe to each other ensure that both pedestrians and motorists may safely coexist on roadways traversed by both.

Although a motorist commands a greater instrumentality of harm, a pedestrian still bears the burden of proving that the motorist was negligent before he can recover damages. A motorist has no special duty to anticipate the presence of a pedestrian in a roadway where there is no crosswalk. Moreover, a motorist is not held to the highest standard of care in guarding against unexpected or unusual obstructions in the road. A motorist has a right to assume that a pedestrian will remain in a position of safety and will not attempt to enter the path of a moving vehicle. However, a motorist may not blindly rely upon this assumption when he sees, should have seen, or anticipates that the pedestrian is going to cross the path of his vehicle. When a motorist sees, should have seen, or anticipates that the pedestrian is going to cross the path of his vehicle, the motorist must exercise reasonable care to protect the pedestrian.

7

Furthermore, as a general rule, "a motorist may assume that the road is safe for travel even at night." *Vowell v. Mfrs. Cas. Ins. Co.,* 229 La. 798, 809, 86 So.2d 909, 913 (La.1956). This general rule is subject to the exception that when driving after dark or in circumstances of limited or impaired visibility, a motorist must observe and control his vehicle in order "to avoid discernable objects in his path of travel; that is, in adverse conditions, a greater degree of care must be exercised." *Jackson v. Scott Truck & Tractor, Inc.*, 31,933, p. 6 (La.App. 2 Cir. 5/5/99), 736 So.2d 987, 992. However, a "motorist driving at night is not charged with the duty of guarding against striking an unexpected or unusual obstruction which is difficult to see and which the driver had no reason to anticipate he would encounter on the highway." *Foster v. Clarendon Nat'l Ins.*, 32,646, p. 14 (La.App. 2 Cir. 3/1/00), 753 So.2d 968, 976. Accordingly, "[a] driver is liable for striking a pedestrian only when there is an opportunity to appreciate the pedestrian's peril in time to avoid the accident." *Id.*

Both Mr. Peltier and Mr. Wylie had a duty to act reasonably under the circumstances. Our review of the record shows that genuine issues of material fact exist as to whether Mr. Peltier acted reasonably under the circumstances he encountered June 28, 2008, which preclude summary judgment.

Trooper Pezant testified that Mr. Peltier acted reasonably when he diverted his attention to Ms. Jones's vehicle to insure that no one was in his path as he passed the vehicle and that there was no reason for him to anticipate the presence of a pedestrian in the middle of the road. He also testified that Mr. Peltier "did everything a normal person . . . would have in that situation." Trooper Pezant made it clear, however, that he did not know Mr. Wylie's exact location in relation to Ms. Jones's vehicle when he was struck, testifying he noted the drawing in his accident report was not drawn

8

to scale for that reason. Without knowing Mr. Wylie's exact location when he was struck, Trooper Pezant's opinion is unsubstantiated.

This is also true of Ms. Jones's and Mr. Evans's opinions that Mr. Peltier "could not miss" Mr. Wylie, i.e., the accident was inevitable. This is better understood when one considers that Ms. Jones's and Mr. Evans's view of Mr. Wylie was from a different perspective than Mr. Peltier's potential view of Mr. Wylie. Trooper Pezant testified that the evidence showed Mr. Wylie was one foot from the center line in the eastbound lane when he was struck. Ms. Jones and Mr. Evans testified only that Mr. Wylie was "in front" of her vehicle. This testimony indicates that Mr. Wylie was in the eastbound lane near the center line further west than Ms. Jones's vehicle but does not establish his distance in front of Ms. Jones's vehicle. Accordingly, the defendants have not established that Mr. Peltier's failure to see Mr. Wylie sooner and avoid him or warn him of his being in danger was reasonable.

The importance of Mr. Wylie's location is emphasized by the fact that Mr. Peltier testified that he did not have his high-beam headlights on because he often encountered fog as he traveled to his donut shop early every morning. Yet, he also testified that the night was clear and did not mention having encountered fog before seeing Ms. Jones's vehicle. Pursuant to Louisiana law, if Mr. Peltier had his high-beam headlights on, the dark highway would have been illuminated a minimum of 500 feet,[2] and Mr. Wylie may also have been illuminated as he stood in the highway.

In *Finley v. North Assurance Co. of America*, 476 So.2d 837 (La.App. 2 Cir. 1985), the court found a driver comparatively negligent for driving out of a patch of fog and striking an inebriated couple that was in the driver's lane of travel. It

---

[2]Louisiana Revised Statutes 32:321(1) requires that vehicle headlights must include "an uppermost distribution of light . . . to reveal persons and vehicles at a distance of at least 150 feet ahead for all conditions."

determined that if the driver could not see the couple due to fog, he was driving too fast for the weather conditions and that if fog did not impair the driver's vision, he should have had his headlights on high beam for maximum visibility.

Without establishing Mr. Wylie's exact location, the defendants have not proved Mr. Peltier's failure to avoid Mr. Wylie was reasonable nor have they proved that Mr. Peltier is free from fault with regard to Mr. Wylie's death. Furthermore, the defendants have not shown that Mr. Peltier's failure to use his high beams was reasonable. These are genuine issues of material fact which preclude summary judgment.

**CONCLUSION**

Close consideration of the evidence illustrates that the defendants have not proved that summary judgment is appropriate herein, as they have failed to establish that Mr. Peltier's failure to see Mr. Wylie and his failure to use his high beams was reasonable. Therefore, the judgment granting summary judgment in favor of the defendants, Joseph C. Peltier, Jr. and State Farm Mutual Automobile Insurance Company, is reversed, and this matter is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules–Courts of Appeal, Rule 2–16.3.

10